Eastern District of Kentucky
FILED
FEB 28 2013
AT LONDON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

Eastern District of Kentucky
TENDERED (MR)
APR 11 2012
AT LONDON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 12-CR-14-GFVT

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | **PLEA AGREEMENT** |
| ALEXIS LEEANN JENKINS | DEFENDANT |

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c)(1), the Defendant will enter a guilty plea to Counts 1 and 2 of the Information, charging a violation of 18 U.S.C. §§ 1201(a)(1) and 2, (aiding and abetting kidnapping) and 18 U.S.C. §§ 249(a)(2) and 2 (aiding and abetting a hate crime) respectively.

2. The essential elements of Count 1 are:

    (a) First, that the Defendant aided and abetted by others, kidnapped, abducted, seized, confined, inveigled, decoyed, and carried away a person;

    (b) Second, that the person was held for the purpose of a benefit; to wit, assault;

    (c) Third, that the Defendant used a facility, means, or instrumentality of interstate commerce, including a road and a motor vehicle in committing or in furtherance of the commission of the offense; and

    (d) Fourth, that the Defendant did so willfully.

3. The essential elements of Count 2 are:

(a) First, that the Defendant aided and abetted others in causing bodily injury to a person;

(b) Second, that the Defendant aided and abetted others in causing bodily injury to a person because of the person's actual or perceived sexual orientation;

(c) Third, that the Defendant and others used a facility, channel, or instrumentality of interstate commerce, including a road and or a motor vehicle in connection with causing bodily injury to the person; and

(d) Fourth, that the Defendant did so willfully.

4. As to the charges, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

On the evening of April 4, 2011, the Defendant, David Jason Jenkins (Jason), Anthony Ray Jenkins (Anthony), and Mable Ashley Jenkins (Ashley) were at a residence on Russell Drive in Cumberland, Harlan County, Kentucky. While at residence Jason and Anthony made a plan to beat up Pennington because he was gay and referred to him as a "faggot" during the discussion. Jason and Anthony came up with a plan to go to Pennington's residence and have the Defendant and Ashley lure Pennington into Anthony's truck by telling Pennington they were going to get drugs. They all knew Pennington would not get in the truck with Jason and Anthony if he knew they were in the truck because of a prior assault involving Pennington. The Defendant and Ashley

agreed with the plan to trick Pennington knowing the true purpose was to physically assault Pennington because of Pennington's sexual orientation.

Jason and Anthony decided to take Anthony's truck because it was new and Pennington would not know that Anthony and Jason were in the truck. Anthony agreed on the condition that the beating not take place in Anthony's new truck. They all drove in Anthony's truck to Pennington's residence in Letcher County, Kentucky. The Defendant and Ashley went inside and asked Pennington to go with them to get drugs knowing the true purpose was for Jason and Anthony to beat Pennington because he was gay.

Pennington asked the Defendant and Ashley who was in the truck with them and they falsely told him their "boyfriends". Based upon their false representations, Pennington agreed to go with them. Anthony was driving. The Defendant and Jason were in the front passenger seat. Ashley was seated in the rear seat of the truck. The dome light did not come on when Pennington entered the rear passenger seat of the truck. This was done to hide the identities of Jason and Anthony. Further, both Jason and Anthony took actions to conceal themselves. Jason and Anthony turned their faces away from Pennington when Pennington entered the truck.

Anthony initially drove to a parking lot by the old middle school. When they left the middle school parking lot, they drove towards Kingdom Come State Park. The Defendant accidently turned on the dome light at which time Pennington was able to see that it was Jason and Anthony in the front seat of the truck. Pennington then asked them

repeatedly to let him out of the truck or to take him home. The rear door of this style truck cannot be opened from the inside unless the front door is opened first. Therefore, Pennington could not escape. Contrary to Pennington's requests, Anthony drove along US Highway 119 to Kingdom Come State Park in Harlan County, Kentucky.

Pennington again asked to be let out of the truck. Anthony proceeded to drive several miles into Kingdom Come State Park which was extremely remote with no lighting. They came to a stop high up in the Park because there was a tree down in the road. When Anthony stopped the truck, both Anthony and Jason exited the truck, and walked to the rear of the truck where Pennington was seated. Pennington unsuccessfully held onto the door to prevent Anthony and Jason from opening the door. When they opened the door, Pennington clung onto Ashley in fear. Anthony began to hit Pennington while Pennington was still in the truck. Jason and Anthony pulled Pennington out of the truck and began hitting and kicking Pennington. During the beating, the Defendant, Ashley, Jason, and Anthony all called Pennington "faggot" and made other anti-homosexual comments. Anthony and Jason beat Pennington with their fists and feet. Either Jason or Anthony was wearing boots. Jason and Anthony continued to beat and kick Pennington even after he was on the ground begging them to stop. At some point during the offense, Jason made sexual threats to Pennington. During the beating, Jason picked up a stick which was lying near Pennington.

Jason and Anthony then returned to the truck. They were looking for a tire iron or crow bar in the truck so they could kill Pennington. When Jason and Anthony went back to the truck, Pennington, who appeared to be almost unconscious, was able to get up and jump over a cliff. The Defendant, Jason, Anthony, and Ashley all got back in the truck. Jason told the Defendant and Ashley they were going back to Pennington's residence to finish the job. When they arrived there, Pennington was not home. Jason told the Defendant and Ashley to tell Pennington's sister that Pennington ripped them off to make it look like a drug deal gone bad. They were arrested after returning to their residence in Cumberland.

The Defendant and Ashley aided and abetted Jason and Anthony in kidnapping Pennington and in taking Pennington to a secluded area to beat Pennington because of Pennington's sexual orientation. The role of the Defendant and Ashley was to trick Pennington into going with them by telling Pennington they were going to get drugs and by helping to hide the true identity of Jason and Anthony from Pennington. The Defendant and Ashley further encouraged the assault by Jason and Anthony by yelling "faggot" and other anti-homosexual comments repeatedly during the beating. Neither the Defendant nor Ashley tried to help Pennington or call the police. US Highway 119 is a channel, facility, and instrumentality of interstate commerce. Anthony's motor vehicle, a truck, which was used to lure Pennington and take him to Kingdom Come State Park to

brutally assault him because of his sexual orientation, is an instrumentality of interstate commerce.

5. With regard to Counts 1 and 2, the statutory punishment is up to life imprisonment, a $ 250,000.00 fine, or both, and a term of supervised release of not more than 5 years. A mandatory special assessment of $100 applies for each count, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

6. The United States and the Defendant recommend the following sentencing guidelines calculations, subject to specific reservations of the Defendant's right to object in subparagraphs (d) and (h), and they may object to other calculations. This recommendation does not bind the Court. The United States, at the time of the preparation of this agreement, believes these recommended guidelines to be the full and complete guidelines applicable to the case. If, however, the United States Probation Office, in its preparation of the Presentence Investigation Report, arrives at a computation of guidelines that is different in any way from the recommended guidelines that follow herein, the United States and the Defendant reserve the right to object to, remain neutral on, or agree with any and all of those guideline computations that are different.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2011, manual, will determine the Defendant's guideline range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct set forth above.

(c)  Pursuant to U.S.S.G. § 2A4.1(a), the base offense level for Count 1 is 32 as the instant conviction involves a violation of 18 U.S.C. § 1201(a)(1).

(d)  Pursuant to U.S.S.G. § 2A4.1(b)(2)(c), increase the base offense level by three levels (bodily injury). The Defendant reserves the right to argue at the time of sentencing that the base offense level should only be increased by two levels based upon the extent of the injuries sustained.

(e)  Pursuant to U.S.S.G. § 2A4.1(b)(3), increase the base offense level by 2 levels (dangerous weapon used).

(f)  Pursuant to U.S.S.G. § 3A1.1(a), increase the base offense level by 3 levels (Victim intentionally selected because of sexual orientation).

(g)  Pursuant to Pursuant to U.S.S.G. §§ 2H1.1(a)(1) and 2A2.1, the base offense level for Count 2 is 27 (assault with intent to commit murder; attempted murder).

(h)  Pursuant to U.S.S.G. § 2A2.1(b)(1)(C), increase the base offense level by three levels (bodily injury). The Defendant reserves the right to argue at the time of sentencing that the base offense level should only be increased by two levels based upon the extent of the injuries sustained.

(i)  Pursuant to U.S.S.G. § 3A1.1(a), increase the base offense level by 3 levels (victim intentionally selected because of sexual orientation).

(j)  Pursuant to U.S.S.G. § 3D1.2(a), Counts 1 and 2 group together.

(k)  Pursuant to U.S.S.G. § 3E1.1, and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

7. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8. The Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction. However, the Defendant reserves the right to appeal her sentence. The Defendant reserves the right to appeal any order of restitution not agreed to by the Defendant as restitution has been requested by the victim.

9. After pleading guilty, the Defendant will make a full and complete financial disclosure to the United States and will assist the United States in the gathering of all financial information. The Defendant will complete and sign a financial disclosure statement or affidavit, will sign financial releases prepared by the United States, and will submit to a deposition in aid of collection at times and places that the United States directs. The Defendant agrees that any unpaid penalty will be submitted to the United States Treasury for offset. If the Defendant fails to comply with any of the provisions of this paragraph, the United States will not move the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may in its discretion argue to the Court that the Defendant should not receive a two level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

10. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws.

11. This document and the sealed supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky, The Civil Rights Division, and the Defendant. The United States has not made any other promises to the Defendant.

12. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

13. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

KERRY B. HARVEY
UNITED STATES ATTORNEY

THOMAS E. PEREZ
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

Date: April 11, 2012    By: _____
                            Hydee R. Hawkins
                            Assistant United States Attorney

Date: 4·11·12           By: _____
                            AeJean (Angie) Cha
                            Attorney, Civil Rights Division
                            Criminal Section

Date: 04/11/12

Alexis Leeann Jenkins
Defendant

Date: 04/11/12

R. Michael Murphy
Attorney for Defendant

**APPROVED**, this 28th day of ~~April~~ February 13, ~~2012~~.

GREGORY F. VAN TATENHOVE, JUDGE
UNITED STATES DISTRICT COURT